[Civ. No. 297. Fifth Dist. Feb. 28, 1964.]

DORA MAY CRANE, Plaintiff and Appellant, v. FRED W. KAMPE et al., Defendants and Respondents.

Vizzard, Baker, Sullivan & McFarland and James Vizzard for Plaintiff and Appellant.

Roland S. Woodruff for Defendants and Respondents.

BROWN (R.M.), J.—Appellant appeals from an order of the trial court entered on June 20, 1963, setting aside a default judgment in favor of appellant and against respondents.

The appellant filed a complaint verified by her attorney on information and belief against David F. Thren, C. E. Langford, individually, and doing business as the Thunderbird Drive-In Theatre and doing business as the Langford Theatres, Ltd., and respondents, Fred W. Kampe and Minnie Kampe. This complaint alleged that the plaintiff was the owner of Lot 82 of Virginia Colony Tract which was served by water through an easement across adjacent Lots 83 and 84, which Lots 83 and 84 she alleged were owned by defendants Thren and Langford; that "the defendants" had joined together to install a drive-in theatre on their property and in so doing combined together to destroy and fill in the ditch

across said lots; that plaintiff had notified the defendants and each of them that such ditch destruction would deprive her of water; that said defendants destroyed said ditch and that she was damaged by reason of said action; and that such constitutes a continuous trespass. She requested that a mandatory injunction should issue requiring defendants to replace said ditch, and prayed for general damages and punitive damages. A judgment of dismissal as to David F. Thren only was filed on November 17, 1961, and service was made upon Daniel F. Thren, sued and served as a John Doe defendant.

Defendant Langford filed a general answer to the complaint but the other defendants, including the respondents, failed to make any appearance. Default judgments were taken against Daniel F. Thren and respondents on July 20, 1962, and a judgment of $1,175 against Thren and respondents was entered on August 9, 1962, but there was no decree on the requested injunction.

Subsequently a settlement was made between the appellant and Langford, and a dismissal was filed as to him on June 27, 1962. Daniel F. Thren was released from the effect of the judgment against him by the payment of $250 as a partial satisfaction, which partial satisfaction of judgment was filed on August 10, 1962.

On April 23, 1963, the attorneys for appellant filed an affidavit to obtain an order in supplementary proceedings. On April 30, 1963, the attorney for respondents filed a notice of motion to vacate the judgment by default and submitted therewith the affidavit of respondent Fred W. Kampe in support of the motion. This affidavit set forth that respondents had heretofore owned Lots 83 and 84 of Virginia Colony Tract; that they sold said property on December 8, 1960, to Langford and his wife who were at that time advised of the ditch rights of the appellant; that sometime thereafter Langford and Thren had taken possession of said premises and the ditch was interfered with by Langford and Thren in the construction of a drive-in theatre; that the affiant was advised that Langford and Thren as owners of the property were going to provide adequate means for water to flow across said property; that upon service of the summons and complaint in this matter the respondents, not understanding why they were named in the action but believing that the appellant was not aware that they had sold the property prior to the acts of interference, went to see Mr. Langford and advised him of the summons and complaint, that Lang-

ford told him that this matter was Langford's responsibility and that his attorneys would take care of it, that it was unnecessary for respondents to employ an attorney, that their rights would be protected, and that they should forget the whole thing. The affidavit goes on to state that the respondents relied on these representations and further, their belief was based on the fact that they had nothing to do whatever with the interference of the easement; they did not appear in said action nor did they employ counsel, but took the advice of Mr. Langford; the respondents were not advised of the request to enter a default nor that a judgment of default was entered against them in August 1962 and knew nothing of it until after said judgment was entered; upon hearing that fact, they sought out counsel who thereupon filed the notice of motion and affidavit. The affidavit further stated that respondents had a good and sufficient defense to said action on the merits of the case.

Appellant's attorney then filed an affidavit in opposition to said motion to vacate default judgment. By minute order on June 17, 1963, the motion to vacate judgment by default was granted, and respondents' answer to the complaint was filed on that date. In their answer, respondents denied all the allegations contained in the complaint and set forth an affirmative defense that the respondents had divested themselves of ownership and possession of the property and that any interference with or obstruction to the said easement was done by the new owners and was not done ''by or with the knowledge or consent of these answering defendants.''

The affidavit filed by appellant's attorney in opposition to the motion alleged that as the attorney for appellant he was informed that the defendant Langford was operating a drive-in theatre on property adjacent to appellant's property; that inquiries were made to the Planning Commission to see whether or not a permit had been issued and that the names of the respondents were mentioned as having some interest in the theatre, that no title search was made on the property but that appellant did obtain certain information from the Planning Commission records that Thren and Langford owned undivided interests therein, and that thereupon appellant filed a complaint against all the defendants to clarify the interests as to each and every defendant in the theatre and in said land.

With regard to the default judgment against respondents, the affidavit of appellant's attorney states that the appellant

appeared in court on the default judgment and testified as to her understanding of the interests of Thren and respondents and that "Said testimony of the plaintiff was admittedly based upon hearsay, which is admissible in a default matter."

It is interesting to note that while in the complaint the appellant alleged that she had "notified the defendants, and each of them, that the destruction of said ditch would deprive her of water for the irrigation of her said land, ..." her attorney in his affidavit states that the said respondents have not exercised diligence or care of any sort to file an appearance in the above entitled matter and that affiant had not been contacted by the respondents but in fact that "Dora May Crane does not know the defendants Kampe and has never had any conversation with either of them."

Appellant contends that the court abused its discretion in setting aside the default judgment.

This proceeding is not brought under section 473 of the Code of Civil Procedure but is a motion addressed to the equity power and as said in *Olivera* v. *Grace*, 19 Cal.2d 570 at page 576 [122 P.2d 564, 140 A.L.R. 1328], "Where the court that rendered the judgment possesses a general jurisdiction in law and in equity, the jurisdiction of equity may be invoked by means of a motion addressed to the court."

We do not think that the trial court abused its discretion in granting relief from default as to extrinsic mistake of fact. See *Hill* v. *Johnson*, 194 Cal.App.2d 779 [15 Cal.Rptr. 236], and *Evry* v. *Tremble*, 154 Cal.App.2d 444, 448 [316 P.2d 49].

In *Vinson* v. *Los Angeles Pac. R. R. Co.*, 147 Cal. 479, at page 483 [82 P. 53], the court stated: "Whether or not the circumstances of a particular case are such that the mistake or inadvertence should be excused is a question the determination of which must, of necessity, be left largely to the court to which application is made, and it is well settled that this court will not interfere with the exercise of the discretion of that tribunal, except in a case where a clear abuse of discretion is apparent. Particularly is this so where the discretion is exercised in favor of the granting of the relief sought, as such action tends to bring about a conclusion on the merits, which is always to be desired."

The general rule is set forth clearly in *Waybright* v. *Anderson*, 200 Cal. 374, 377 [253 P. 148], as follows: "Preliminary to a consideration of the propriety of the trial court's action in the instant cases it may be stated that the

authorities uniformly declare that a motion to set aside a default judgment is addressed to the sound discretion of the trial court and in the absence of a clear showing of abuse in the exercise thereof an appellate court will not disturb the order of the court below. [Citations.]

██ "Moreover, it is the policy of the law to favor, wherever possible, a hearing on the merits and appellate courts are 'much more disposed to affirm an order when the result is to compel a trial upon the merits than it is when the judgment by default is allowed to stand, and it appears that a substantial defense could be made.' "

See also the case of *Berri* v. *Rogero*, 168 Cal. 736, at page 740 [145 P. 95], where it is stated: "The policy of the law is to have every litigated case tried upon its merits, and it looks with disfavor upon a party who, regardless of the merits of his case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary. ... A broad discretion is allowed to courts in granting relief, against default, and it is in cases only where the lower court has abused its discretion that the appellate court will reverse its action."

██ It was well established by the affidavits of both the respondents and the appellant that the respondents were not the owners of nor in possession of the property and did not participate in any way in the commission of the act of cutting off the irrigation ditch.

As noted in the facts above, the complaint was verified by the attorney for the appellant and stated that the respondents had been notified by the appellant that she would be damaged by the destruction of the irrigation ditch, and then in the affidavit against the motion to vacate default judgment it was stated that the appellant had not conversed with the respondents.

The fact that the default judgment was based solely on hearsay testimony given by the appellant indicates that she did not have personal knowledge of the true facts of the case.

The respondents have relied upon their conversation with Langford that his attorney would protect their rights, and when a default is entered because defendant has relied on assurances of a third party to defend, it is stated in 1 Freeman on Judgments (5th ed.), section 246, pages 492-494, as follows: "The question always is, was the defendant reasonably justified under the circumstances in relying upon such a promise, or, in other words, was his neglect to attend to the matter himself, excusable.

"The general rule has been applied, however, and the judgment vacated in a number of different situations, one of the most frequent being where one defendant has relied upon a codefendant to appear and defend or otherwise attend to the case for him, as where a wife relies upon a husband, or an employee upon an employer who is the real party in interest, or a surety upon his principal. ... So where a codefendant who has agreed to defend for the other defendant fails to do so but files an answer for himself containing a defense good as to both defendants, and plaintiff dismisses as to him and takes default against the other defendant, it is an abuse of discretion to deny the latter's application for relief.''

Such defaults have been opened even back in the years prior to the adoption of section 473 of the Code of Civil Procedure, as will be noted in the case of *Santa Barbara Live Stock & Farming Co.* v. *Thompson* (1873) 46 Cal. 63, where it was stated at page 64: ''We think the Court below erred in opening the default against the defendant Thompson. There was no showing on his behalf to excuse his failure to answer, and, so far as appears from this record, there was no reason why the default against him should be set aside. But in respect to the defendant Hall, we cannot say, upon the facts disclosed by his affidavit, that the Court abused its discretion in opening the default and permitting him to answer.

''On the question of diligence, the showing was not entirely satisfactory, but was not so fatally defective as to justify the conclusion that the Court below abused its discretion in opening the default.''

A default judgment was vacated where an employee was involved in a lawsuit as a codefendant with his employer in the case of *Montijo* v. *Robert Sherer & Co.* 5 Cal.App. 736 [91 P. 261]. There, the court said at pages 738-739: ''That upon being served he called the attention of his employers to the service of summons upon him, and was told by them that he need not bother about the matter, as the suit would be taken care of by the Los Angeles Interurban Railway Company. That he relied upon such statement and filed no answer. Under the circumstances he had a right to rely upon the statement that the corporation whom he believed to be the real party in interest would protect him. . . .

''... The discretion of the court in vacating the default and setting aside the judgment thereon appears to have been liberally exercised with a view to the trial of the case on its merits. This was in accordance with the universal rule.''

This same view is expressed in *Stout* v. *Bakker*, 212 Cal.

App.2d 78, 82-83 [27 Cal.Rptr. 661]. The court also added that abuse of discretion must be shown before reversing such an order. This case mentions that on the question of diligence, where the showing is not entirely satisfactory, it is not so fatally defective as to justify the conclusion that the court abused its discretion in opening the default.

In the present case there is no showing that the appellant was prejudiced in any way by the failure of respondents to file an answer, and we are in accord with the following views set forth in *Hallett* v. *Slaughter,* 22 Cal.2d 552, 556-557 [140 P.2d 3] : " 'There are many cases holding that the party may have relief in equity from the consequences of his mistake of fact, although he was somewhat negligent in making the mistake, if his negligence in no way prejudiced the opposing party. [Citations.] ... At most, it was a question of fact for the court below to determine whether or not the lack of vigilance on the part of the plaintiff was such as would not have occurred with a man of ordinary care and prudence, under the same circumstances. That court has decided the question in favor of the plaintiff, and we are satisfied with its conclusion.' " (*Soule* v. *Bacon,* 150 Cal. 495, 497-498 [89 P. 324].)

In *Sofuye* v. *Pieters-Wheeler Seed Co.,* 62 Cal.App. 198, at pages 206-207 [216 P. 990], the court said : "While it was, as a matter of law, the duty of the defendant to have answered the complaint, still its reliance entirely upon the Cowells to keep their agreement to defend the action and thus protect the defendant appears to have been characterized by good faith and an honest belief that the Cowells would, upon receiving the summons and copy of the complaint, seasonably interpose an answer or demur to the plaintiff's pleading. In relying upon the promise of the Cowells or their manager to take the necessary steps to defend against the claim of plaintiff, the defendant acted as any reasonably careful person would ordinarily act, and, therefore, its neglect to answer within due legal time is, in our judgment, clearly excusable, within the meaning and intent of section 473. "

In *Galper* v. *Galper,* 162 Cal.App.2d 391, 396-397 [328 P.2d 487], the court said : "A motion to set aside a default judgment is addressed to the sound discretion of the trial court and, in the absence of a clear showing of abuse in the exercise thereof, an appellate court will not disturb the order of the court below. ... However, realizing that circumstances not amounting to extrinsic fraud, but of a serious nature for which defendant was not responsible and which prevented

him from being heard, may exist to create an injustice, our courts in a limited number of situations have exercised their 'inherent power and jurisdiction' to relieve the defaulting party from a judgment where it is probable that an injustice has resulted. The courts have labeled such situations 'extrinsic accident' and 'mistake of fact' but in doing so, have made it plain that the lack of vigilance on the part of the person seeking to be relieved must be such as would not have occurred with a man of ordinary care and prudence under the circumstances." (See *Corey* v. *Weerts,* 214 Cal.App.2d 416 [29 Cal.Rptr. 533].)

A close examination of the record indicates that the respondents have a meritorious defense. ██ "The requirement that the complaint allege a meritorious case does not require an absolute guarantee of victory." (*Olivera* v. *Grace, supra,* 19 Cal.2d 570, 579; *Conforti* v. *Dunmeyer,* 209 Cal. App.2d 41, 44 [25 Cal.Rptr. 504].) The same rule is applicable to a defense.

██ At no place does the affidavit of appellant indicate that the respondents owned this property at any time or that they personally interfered with the irrigation ditch. Testimony on the matter was made by the appellant as hearsay. No title report was obtained, and none of the facts alleged by respondents was controverted by appellant.

In *Ramsey Trucking Co.* v. *Mitchell,* 188 Cal.App.2d Supp. 862, at page 866 [11 Cal.Rptr. 283], the court stated: "Each tub must rest on its own bottom, and each case on its own facts. On the basis of the entire record in this case we believe that the trial judge had a sufficient area of discretion to permit him to set aside the default and order a trial on the merits."

We think the court could determine in setting aside the default that the respondents had acted as reasonably careful persons under the circumstances of this case, and while in *Beall* v. *Munson,* 204 Cal.App.2d 396, 400 [22 Cal.Rptr. 333], the rules are fairly set out as to what can be expected of a person as far as diligence is concerned and it is said that the courts are not necessarily the guardians of incompetent parties who are grossly careless as to their affairs, we feel that under the circumstances in this case the court was fully justified in setting aside the default and vacating the default judgment.

The order is affirmed.

Conley, P. J., and Stone, J., concurred.